IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

EVELYN SUE MASSEY,                    )
          **Plaintiff,**          )
                               )
**v.**                                )          **CIVIL ACTION NO. 2:14-01571**
                               )
**CAROLYN. W. COLVIN,**               )
**Acting Commissioner of Social Security,** )
          **Defendant.**         )

## PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for Disability Insurance Benefits (DIB), under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. By Standing Order entered February 2, 2014 (Document No. 4.), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit Proposed Findings of Fact and Recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are the parties' cross-Motions for Judgment on the Pleadings. (Document Nos. 11 and 12.)

The Plaintiff, Evelyn Sue Massey (hereinafter referred to as "Claimant"), filed an application for DIB on July 1, 2010 (protective filing date), alleging disability as of June 1, 2010, due to anxiety, depression, memory loss, diabetes, ulcers, GERD, and high blood pressure. (Tr. at 39, 85, 140-41, 142-45, 178.) The claim was denied initially and upon reconsideration. (Tr. at 85-87, 91-93) On June 10, 2011, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 96-97.) A hearing was held on August 29, 2012, before the Honorable Jack Penca. (Tr. at 55-82.)  By decision dated September 6, 2012, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 39-50.) The ALJ's decision became the final decision of the Commissioner on November 19, 2013, when the Appeals Council denied Claimant's request for review. (Tr. at 1-6.) Claimant filed

the present action seeking judicial review of the administrative decision on January 14, 2014, pursuant to 42 U.S.C. § 405(g). (Document No. 2.)

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(I), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2012). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2012). The Commissioner must show two things: (1) that the

claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> *(C) Rating the degree of functional limitation.* (1)Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
>
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.
>
> (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.
>
> (4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area

3

(episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1).[1] Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must

---

[1] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that affective disorders, including depression, will be deemed severe when (A) there is medically documented continuous or intermittent persistence of specified symptoms and (B) they result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation, each of extended duration or (C) there is a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms currently attenuated by medication or psychosocial support and (1) repeated extended episodes of decompensation; (2) a residual disease process resulting in such marginal adjustment that a minimal increase in mental demands or change in the environment would cause decompensation; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement, and the indication of a continued need for such an arrangement.

4

be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she had not engaged in substantial gainful activity since the alleged onset date, June 1, 2010. (Tr. at 41, Finding No. 2.) Under the second inquiry, the ALJ found that Claimant suffered from "obesity, diabetes mellitus, mood disorder, and panic disorder with agoraphobia," which were severe impairments. (Tr. at 41, Finding No. 3.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 43, Finding No. 4.) The ALJ then found that Claimant had the residual functional capacity for medium work, as follows:

> I find that the [C]laimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except that she can perform no more than simple, routine, repetitive tasks in a work environment involving no more than occasional decision-making.

(Tr. at 46, Finding No. 5.) At step four, the ALJ found that Claimant was able to return to her past relevant work as a cashier. (Tr. at 49, Finding No. 6.) On this basis, benefits were denied. (Tr. at 50, Finding No. 7.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was

5

defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was born on January 4, 1957, and was 55 years old at the time of the administrative hearing on August 29, 2012. (Tr. at 58, 142.) The ALJ found that Claimant had at least a high school education obtained by a Generalized Equivalency Diploma and was able to communicate in English. (Tr. at 179.) In the past, she worked as a cashier and stock clerk (Tr. at 17, 80, 185-92.)

 The Medical Record

The Court has considered all evidence of record, including the medical evidence and will summarize it and discuss it below in relation to Claimant's arguments.

Amy Dale Casto, D.O.:

On September 18, 2006, Dr. Casto noted that Claimant's depression was stable. (Tr. at 274.) On September 16, 2010, Claimant presented for treatment of stress and anxiety that had continued for months and had caused Claimant to stop working because she was very irritable. (Tr. at 370.)

Claimant reported that last year she began experiencing problems with thinking one thing and speaking another, forgetting birthdays and paying bills, difficulty making decisions, difficulty focusing, inability to write checks, and feelings of shakiness. (Id.) Psychiatric exam revealed appropriate speech, spontaneous stream of thought, intact associations, good judgment and insight, full orientation, intact recent and remote memory, awareness to current and past events and history, good vocabulary, but an anxious and tearful mood and affect. (Tr. at 372.) Dr. Casto assessed neurotic anxiety and depressive disorder NOS. (Id.) She prescribed Wellbutrin, Effexor, and Klonopin. (Id.)

Claimant returned on October 4, 2010, and reported that she was 15% better but that the medication wore off by early afternoon. (Tr. at 374, 541.) She reported that it was very difficult to make a decision, which caused her to cry. (Id.) Mental exam remained the same and Dr. Casto adjusted her medications. (Tr. at 375-76, 541-42.) Dr. Casto referred Claimant to Process Strategies, where she was seen for a psychiatric evaluation on October 5, 2010, for complaints of severe depression and anxiety and impaired problem solving abilities. (Tr. at 540.)

Dr. Casto noted on March 3, 2011, that Claimant's psychiatrist was wanting to taper her off the Wellbutrin and Effexor for depression and start her on Lamictal. (Tr. at 632.) Dr. Casto observed that Claimant was oriented and her mood and affect were appropriate to the situation. (Tr. at 634.) She prescribed Klonopin for anxiety. (Id.) On May 25, 2011, Dr. Casto noted that Claimant's psychiatrist was monitoring and changing the dose of Klonopin to every six hours, but Claimant was trying not to take it that often. (Tr. at 629.)

Lisa C. Tate, M.A. - Psychological Evaluation:

On November 30, 2010, Ms. Tate, a licensed psychologist, conducted a psychological evaluation, at which time Ms. Tate observed good speech production with normal rate and volume.

7

(Tr. at 566.) Claimant reported anxiety, depression, memory loss, and medical problems. (Id.) She reported a five year history of depression that had fluctuated over time and was treated with medications that Claimant considered as helpful. (Id.) She indicated that she was depressed at least once a week, for one to three days, and had symptoms of crying, feeling lost, loss of interest in activities, social withdrawal, and loss of energy. (Id.) Claimant reported an 18 month history of anxiety that had worsened over time, with daily symptoms that included tension, feeling on edge, irritability, feeling nauseated, feelings of fear, shakiness, feeling overwhelmed, and excessive worry. (Id.) Claimant reported an 18 month memory loss, characterized by not remembering where she was driving, forgetting how to write checks or pay bills, forgetting appointments, speaking words other than she intended to speak, and forgetting how to run the computer and other work tasks. (Id.)

On mental status exam, Ms. Tate noted that Claimant was alert and oriented, was anxious and depressed, had a broad and restrictive affect, was tearful and increasingly anxious when asked memory words, had logical and coherent thought processes, had no obsessive thoughts or compulsive behaviors, had fair insight and normal judgment, denied suicidal or homicidal ideation, had normal immediate and remote memory, had markedly deficient recent memory, had mildly deficient concentration, and had normal psychomotor behavior. (Tr. at 568.) Results of the WAIS-III revealed a Full Scale IQ score of 65, which was considered valid. (Tr. at 568-69.) Ms. Tate diagnosed generalized anxiety disorder and depressive disorder NOS. (Tr. at 569.)

Ms. Tate noted Claimant's activities to have included watching television, reading ten minutes at night, weekly grocery shopping, eating out three to four times a week, doing laundry twice a week, sweeping, dusting, cooking, washing dishes, visiting friends twice a month, going to the flea market two to three times a month, attending medical appointments, and spending time with her grandchildren. (Tr. at 570.) Ms. Tate opined that Claimant's concentration was mildly deficient

and her persistence and pace were within normal limits. (Id.)

Jeff Boggess, Ph.D. - Psychiatric Review Technique:

On December 13, 2010, Dr. Boggess completed a form Psychiatric Review Technique, on which he opined that Claimant's depressive and generalized anxiety disorders were non-severe impairments. (Tr. at 583-97.) He further opined that the impairments resulted in no more than mild limitations in activities of daily living; maintaining social functioning, concentration, persistence, or pace; and no episodes of decompensation of extended duration. (Tr. at 593.) In reaching this conclusion, Dr. Boggess reviewed Ms. Tate's psychological evaluation report. (Tr. at 595.)

Rosemary L. Smith, Psy.D. - Psychiatric Review Technique:

On April 19, 2011, Dr. Smith also completed a form Psychiatric Review Technique, on which she opined that Claimant's depressive and anxiety disorders were non-severe impairments. (Tr. at 599-613.) As did Dr. Boggess, Dr. Smith opined that Claimant's impairments resulted in no more than mild limitations in activities of daily living; maintaining social functioning, concentration, persistence, or pace; and no episodes of decompensation of extended duration. (Tr. at 609.)

Amy Wehrle, D.O. - Process Strategies:

On May 9, 2011, Claimant reported that she quit blaming herself for her son's issues, that the medication was working well although she continued to have occasional agitation and hatefulness that was controllable, that she did not have any medication side effects, that her appetite was stable, and that she had been sleeping well. (Tr. at 830.) On mental status exam, Dr. Wehrle noted that Claimant was pleasant and cooperative, made good eye contact and smiled, had a euthymic mood, had no psychomotor abnormalities, had a broad and appropriate affect, presented goal-directed stream of thought, denied suicidal or homicidal ideation, denied delusions of hallucinations, was alert and oriented, had adequate insight and judgment, and had sustained

memory and concentration. (Id.) Dr. Wehrle assessed that Claimant was doing fairly well. (Id.) She diagnosed mood disorder NOS and panic disorder with agoraphobia. (Id.)

Dr. Wehrle noted on August 1, 2011, that Claimant was upset after having told her son he could not move in with her but that she felt good about her decision. (Tr. at 828.) Claimant reported no side effects or complaints, but vocalized occasional passive suicidal thoughts without intent or plan. (Id.) Mental status exam essentially was normal and Dr. Wehrle noted that Claimant's symptoms had improved. (Id.) On September 26, 2011, Claimant reported that her mood had improved with medication, but stated that she had problems with anxiety when she was in public or when driving. (Tr. at 826.) Mental status exam essentially remained unchanged and Dr. Wehrle continued her medications. (Tr. at 827.) On May 18, 2012, Claimant reported one incident of having heard voices, and on June 8, 2012, she stated that her mood was good. (Tr. at 814, 816.) On July 6, 2012, Dr. Wehrle indicated that Claimant was "doing well," and that she reported that her mood was good. (Tr. at 812.)

Amy Dale Casto, D.O.:

On September 18, 2006, Dr. Casto noted that Claimant was a known diabetic, whose blood sugars and compliance were good and severity of condition was stable. (Tr. at 274-76.) Claimant was taking insulin on a daily basis. (Tr. at 276.)

On March 3, 2011, Dr. Casto noted that Claimant's diabetes was not well-controlled but that she reported she was watching her diet and that Dr. Kahwash was increasing her insulin slightly. (Tr. at 632.) On May 25, 2011, Dr. Casto noted that Claimant's blood sugars were running 200 to 300 and that Dr. Kahwash was increasing her insulin, as tolerated. (Tr. at 629.) Dr. Casto noted on February 15, 2012, that Claimant's diabetes was stable on medication. (Tr. at 843.)

A. Rafael Gomez, M.D. - Physical RFC Assessment:

On December 9, 2010, Dr. Gomez, a state agency consultant, completed a form Physical RFC Assessment, on which he opined that Claimant's diabetes, history of hypothyroidism, and status post bronchopneumonia limited her to performing a full range of medium exertional level work. (Tr. at 574-82.) Dr. Gomez noted Claimant's activities included preparing simple meals, shopping for groceries, watching television, playing with her grandchildren, talking on the telephone to friends, attending church on Sunday mornings, and performing personal care with difficulty. (Tr. at 579.) He also noted that she had problems with speaking and experienced some confusion. (Id.) Dr. Gomez opined that Claimant had no exertional limitations. (Id.) C. Bancoff, another state agency consultant, affirmed Dr. Gomez's opinion as written, on April 11, 2011. (Tr. at 598.)

Ziad Kahwash, M.D., Endocrinologist:

On June 23, 2011, Dr. Kahwash noted that Claimant's blood sugars at home ranged from a high of 280mg to a low of 42mg. (Tr. at 795.) Random blood glucose testing was 310mg during Claimant's exam and a fasting blood glucose was 17mg. (Id.) Claimant denied any prior history of blurred vision, tingling of the hands or feet, burning sensation of the legs or feet, numbness of the hands or feet, any mental status change due to hypoglycemia, and she denied following a diabetic diet. (Id.) Claimant reported that she took her medications as recommended. (Id.) Dr. Kahwash noted that Claimant was nervous and anxious. (Tr. at 796.) He counseled Claimant on diabetic foot care and on the short and long-term complications of uncontrolled diabetes. (Tr. at 799.) He further counseled her on daily self foot examinations. (Id.) He recommended daily blood sugar level checks by fingerstick, a diabetic diet of 1600 calories through the American Diabetic Association, weight loss and exercise, and counseled her about medication administration and compliance. (Id.)

On October 20, 2011, Dr. Kahwash noted that her diabetes mellitus was poorly controlled.

(Tr. at 810.) On October 24, 2011, Dr. Kahwash noted an in-office blood glucose level of 424mg and a fasting level of 177mg. (Tr. at 806.) Claimant reported that she was not taking her medication as recommended and skipped insulin frequently. (Tr. at 807.) She missed her insulin that morning and indicated that she was only taking 40 units in the morning and 30 in the evening, when she was supposed to have taken 42 in the morning and 40 in the evening. (Id.) Dr. Kahwash again provided diabetic counseling. (Tr. at 810.)

On May 17, 2012, Claimant reported that she felt fine and indicated home blood sugar readings of 300mg for the high and 168mg as the low, with an in-office reading of 168. (Tr. at 800, 802.) Dr. Kahwash noted Claimant's reports that her blood sugars were fine when she followed his instructions. (Tr. at 801.)

Claimant's Challenges to the Commissioner's Decision

Claimant alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ failed to evaluate and weigh properly the psychological opinion evidence of record and erred when he based his RFC opinion on his own lay opinion rather than the supported medical opinions contained in the record. (Document No. 11 at 6-8.) Claimant asserts that the ALJ failed to explain the weight given to Ms. Tate's opinion, who provided the only psychological examination of record. (Id. at 6-7.) Claimant contends that the ALJ substituted his own opinion, derived from his interpretations of medical records and test results, for the opinions of the qualified medical professionals. (Id. at 7.) Claimant asserts that her psychological symptoms, including suicidal thoughts, panic attacks, and auditory hallucinations, were of such a severity that should have precluded her employment and contends that the ALJ therefore, erred in assessing Claimant's mental RFC. (Id. at 8.)

In response, the Commissioner asserts that Ms. Tate did not render an opinion about

12

Claimant's mental ability to work and that her examination findings merely bolster the ALJ's RFC. (Document No. 12 at 7.) The Commissioner notes that on mental status exam, Claimant presented with normal judgment, memory, and only mildly deficient concentration. (Id. at 7-8.) The Commissioner also asserts that the two state reviewing psychologists opined that Claimant did not have a severe mental impairment. (Id. at 8.) The ALJ accounted for the limitations supported by the record and based on these limitations, the VE testified that Claimant was capable of performing her past relevant work as a cashier. (Id.) The Commissioner therefore contends that Claimant's argument is without merit. (Id.)

Claimant next alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ failed to consider her diabetic-based limitations in assessing her RFC. (Document No. 11 at 8-9.) Claimant asserts that the ALJ failed to account for the limitations to which she testified, including burning in the feet, numbness in the hands, and fatigue from sugar level variance. (Id. at 9.) As a result of these limitations, Claimant contends that her ability to stand or walk for long periods of time was limited and that she was required to take numerous breaks throughout the day to nap. (Id.) Claimant asserts that in his decision, the ALJ provided only a history of her diabetic condition, with conclusory statements regarding the evaluation of her testimony and subjective evidence. (Id. at 9-10.) The ALJ failed to incorporate in his RFC assessment any consideration of Claimant's diabetic-related limitations, and therefore, improperly determined that she was capable of performing medium level work. (Id. at 10.)

In response, the Commissioner asserts that Claimant received routine, conservative treatment that was successful in controlling her alleged symptoms when she was compliant with the recommended treatment. (Document No. 12 at 8.) The Commissioner notes that Claimant was non-compliant with treatment on occasion however, and at times failed to follow-up on

recommendations, especially regarding the recommended diabetic diet to control her symptoms of diabetes. (Id.) Nevertheless, Dr. Kahwash noted in May 2012, that Claimant's blood sugars were all right when she followed instructions and Dr. Casto indicated that her diabetes was stable on medication. (Id.) Although Claimant testified that her diabetes caused numbing and burning in her extremities, the Commissioner points out that Dr. Kahwash's treatment notes specifically demonstrate that she did not have any history of such condition from June 2011, through October 2011. (Id.) The Commissioner also notes that a state agency reviewing physician opined that Claimant was capable of performing medium level work, and therefore, because the ALJ found that she could do her past work as a cashier, which was light work, the ALJ asserts that she was capable of performing her past work. (Id.)

Finally, Claimant alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ erred in assessing Claimant's credibility. (Document No. 11 at 9-10.) Claimant asserts that the ALJ's finding that she was incredible because she received essentially routine and conservative treatment is without support in the record. (Id. at 9.) She notes that she consistently complained of poor mental health symptoms, sought treatment, was referred to a mental health specialist, and received treatment in the form of psychotropic drugs and counseling. (Id.) Pursuant to SSR 96-7p, Claimant contends that these factors indicate strongly that her allegations of pain were credible. (Id.)

In response, the Commissioner notes that despite Claimant's allegations of disabling pain, she continued to work in her antique store during the relevant period of time. (Document No. 12 at 9.) She indicated on forms associated with the filing of the Application that she engaged in social activities with her grandchildren and friends and attended church. (Id. at 9-10.) The Commissioner contends that the ALJ considered Claimant's testimony and statements regarding her subjective

symptoms and assessed her credibility in the context of all the evidence before him. (Id. at 10.)

Analysis.

1. Opinion Evidence and RFC Analysis.

      Claimant first alleges that the ALJ erred in evaluating and weighing Ms. Tate's medical opinion when he based his RFC finding on his own lay opinion rather than the supported medical opinions of record. (Document No. 11 at 6-8.) "RFC represents the most that an individual can do despite his or her limitations or restrictions." See Social Security Ruling 96-8p, 61 Fed. Reg. 34474, 34476 (1996). Pursuant to SSR 96-8p, the RFC assessment "must be based on all of the relevant evidence in the case record," including " the effects of treatment" and the "limitations or restrictions imposed by the mechanics of treatment; e.g., frequency of treatment, duration, disruption to routine, side effects of medication." Looking at all the relevant evidence, the ALJ must consider the claimant's ability to meet the physical, mental, sensory and other demands of any job. 20 C.F.R. §§ 404.1545(a), 416.945(a) (2012). "This assessment of your remaining capacity for work is not a decision on whether you are disabled, but is used as the basis for determining the particular types of work you may be able to do despite your impairment(s)." Id. "In determining the claimant's residual functional capacity, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of her impairments." Ostronski v. Chater, 94 F.3d 413, 418 (8th Cir. 1996).

      Opinions on a claimant's Residual Functional Capacity are issues that are reserved to the Commissioner. The Regulations state that:

> We use medical sources, including your treating source, to provide evidence, including opinions, on the nature and severity of your impairment(s). Although we consider opinions from medical sources on issues such as whether your impairment(s) meets or equals the requirements of any impairment(s) in the Listing of Impairments in appendix 1 to subpart P of part 404 of this chapter, your residual functional capacity . . . or the application of vocational factors, the final

15

responsibility for deciding these issues is reserved to the Commissioner.

See 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2) (2012).

> In determining what a claimant can do despite his limitations, the SSA must consider the entire record, including all relevant medical and nonmedical evidence, such as a claimant's own statement of what he or she is able or unable to do. That is, the SSA need not accept only physicians' opinions. In fact, if conflicting medical evidence is present, the SSA has the responsibility of resolving the conflict.

Diaz v. Chater, 55 F.3d 300, 306 (7th Cir. 1995) (citations omitted).

The Regulations state that opinions on these issues are not medical opinions as described in the Regulation dealing with opinion evidence (20 C.F.R. §§ 404.1527(a)(2) and 416.927(a)(2)); rather, they are opinions on issues reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e) and 416.927(e). For that reason, the Regulations make clear that "[w]e will not give any special significance to the source of an opinion on issues reserved to the Commissioner. . . ." Id. §§ 404.1527(e)(3) and 416.927(e)(3). The Regulations further provide that "[f]or cases at the Administrative Law Judge hearing or Appeals Council level, the responsibility for deciding your residual functional capacity rests with the Administrative Law Judge or Appeals Council." See 20 C.F.R. §§ 404.1545 and 416.946 (2012). However, the adjudicator must still apply the applicable factors in 20 C.F.R. § 416.927(d) when evaluating the opinions of medical sources on issues reserved to the Commissioner. See Social Securing Ruling ("SSR") 96-5p, 61 FR 34471, 34473 (1996).

Social Security Ruling 96-5p makes a distinction between an RFC assessment, which is "the adjudicator's ultimate finding of 'what you can still do despite your limitations,'" and a "'medical source statement,' which is a 'statement about what you can still do despite your impairment(s)' made by an individual's medical source and based on that source's own medical findings." Id. SSR

96-5p states that "[a] medical source statement is evidence that is submitted to SSA by an individual's medical source reflecting the source's opinion based on his or her own knowledge, while an RFC assessment is the adjudicator's ultimate finding based on a consideration of this opinion and all the other evidence in the case record about what an individual can do despite his or her impairment(s)." Adjudicators "must weigh medical source statements under the rules set out in 20 C.F.R. § 416.927, providing appropriate explanations for accepting or rejecting such opinions." Id. at 34474.

Ms. Tate conducted a psychological evaluation of Claimant on November 30, 2010, and the ALJ summarized the report of her evaluation in his decision. (Tr. at 48-49.) Contrary to Claimant's assertion, Ms. Tate did not render a medical opinion. Rather, she evaluated Claimant and assessed her condition in the form of diagnoses. (Tr. at 48-49, 566-70.) Ms. Tate diagnosed generalized anxiety disorder and depressive disorder NOS. (Tr. at 48, 569.) On mental status exam, Ms. Tate noted that Claimant's insight and judgment were fair, her recent memory was markedly deficient but her immediate and remote memory was normal, her concentration was mildly deficient, and her psychomotor behavior was normal. (Tr. at 48, 568-69.) These findings, as the Commissioner asserts, somewhat support the ALJ's RFC finding. Regarding the opinion evidence of record from Drs. Boggess and Smith, the two state reviewing agency consultants, the ALJ declined to give their opinions any weight because they concluded that Claimant did not have a severe mental impairment. (Tr. at 49.) The ALJ concluded that Claimant had mild difficulties in maintaining activities of daily living and social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation. (Tr. at 44-45.) Mental status examination findings were unremarkable, Dr. Wehrle noted in 2011, that Claimant was doing fairly well, and on July 6, 2012,

indicated that she was doing well with a good mood. Based on these findings and the evidence of record, the ALJ limited Claimant accordingly in his RFC assessment. Accordingly, the undersigned finds that the ALJ's decision respecting Ms. Tate's evaluation and resulting RFC is supported by substantial evidence of record.

2. <u>Diabetic-Based Limitations</u>.

Claimant next alleges that the ALJ failed to consider her diabetic-based limitations in assessing his RFC. (Document No. 11 at 8-9.) The ALJ noted in his decision that Claimant had a long-standing diagnosis of diabetes mellitus. (Tr. at 47.) He acknowledged her treatment with Drs. Casto and Kahwash. (<u>Id.</u>) He noted Dr. Casto's note on March 3, 2011, that Claimant's diabetes were not well controlled and therefore, her medications were increased. (<u>Id.</u>) Claimant followed up with Dr. Kahwash in June, 2011, and reported symptoms of weakness. (<u>Id.</u>) Her diabetes remained uncontrolled and Dr. Kahwash reported diagnosed fungal paronchia, chronic renal failure, and vitamin B12 deficiency. (<u>Id.</u>) The ALJ noted that through May 17, 2012, her diabetes remained uncontrolled. (Tr. at 47-48.) Nevertheless, the ALJ also acknowledged that Claimant was non-compliant with recommended treatment, especially regarding the diet to control the symptoms of her diabetes. (Tr. at 49.) Claimant reported that she was not taking her medications and skipped insulin frequently. (Tr. at 807.) To this end, Dr. Kahwash specifically noted on May 17, 2012, that Claimant's blood sugars were fine when she followed his instructions. (Tr. at 801.)

Claimant asserts however, that the ALJ failed to consider her reports of numbness in her hands and feet, as well as fatigue resulting from sugar level variance. Although Claimant testified to these limitations, the medical evidence fails to support her reports. Dr. Kahwash's treatment notes specifically note that Claimant denied any prior history of blurred vision, tingling of the hands or

feet, burning sensation of the legs or feet, numbness of the hands or feet, or any mental status change due to hypoglycemia. (Tr. at 795, 800, 806.) Moreover, Dr. Kahwash counseled Claimant on diabetic foot care and daily self foot examinations, as well as proper compliance with recommended treatment. (Id.) The record therefore, does not support any such diabetic-related limitations, and the ALJ properly assessed her physical RFC. As the Commissioner notes, the ALJ assessed an RFC for medium exertional level work, but found that Claimant could perform her past relevant work as a cashier, which was light level work. The undersigned therefore, finds that the ALJ adequately considered Claimant's physical limitations and that Claimant's argument in this respect is without merit.

3. Credibility.

        Finally, Claimant alleges that the ALJ erred in assessing her credibility. (Document No. 11 at 9-10.) A two-step process is used to determine whether a claimant is disabled by pain or other symptoms. First, objective medical evidence must show the existence of a medical impairment that reasonably could be expected to produce the pain or symptoms alleged.  20 C.F.R. §§ 404.1529(b) and 416.929(b) (2012); SSR 96-7p; See also, Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996).  If such an impairment is established, then the intensity and persistence of the pain or symptoms and the extent to which they affect a claimant's ability to work must be evaluated.  Id. at 595.  When a claimant proves the existence of a medical condition that could cause the alleged pain or symptoms, "the claimant's subjective complaints [of pain] must be considered by the Secretary, and these complaints may not be rejected merely because the severity of pain cannot be proved by objective medical evidence." Mickles v. Shalala, 29 F.3d 918, 919 (4th Cir. 1994). Objective medical evidence of pain should be gathered and considered, but the absence of such evidence is not determinative.  Hyatt v.

Sullivan, 899 F.2d 329, 337 (4th Cir. 1990). A claimant's symptoms, including pain, are considered to diminish her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4) (2012). Additionally, the Regulations provide that:

> [w]e will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your treating, examining, or consulting physician or psychologist, and observations by our employees and other persons. . . . Factors relevant to your symptoms, such as pain, which we will consider include:
>
> (i) Your daily activities;
>
> (ii) The location, duration, frequency, and intensity of your pain or other symptoms.
>
> (iii) Precipitating and aggravating factors;
>
> (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
>
> (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
>
> (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 or 20 minutes every hour, sleeping on a board, etc.); and
>
> (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3) (2012).

SSR 96-7p repeats the two-step regulatory provisions:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the individual's pain or other symptoms. * * * If there is no medically determinable physical or mental impairment(s), or if there is a medically determinable physical or mental impairment(s) but the impairment(s) could not reasonably be expected to produce the individual's pain or other symptoms,

the symptoms cannot be found to affect the individual's ability to do basic work activities.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

SSR 96-7p, 1996 WL 374186 (July 2, 1996). SSR 96-7p specifically requires consideration of the "type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms" in assessing the credibility of an individual's statements. Significantly, SSR 96-7p requires the adjudicator to engage in the credibility assessment as early as step two in the sequential analysis; i.e., the ALJ must consider the impact of the symptoms on a claimant's ability to function along with the objective medical and other evidence in determining whether the claimant's impairment is "severe" within the meaning of the Regulations. A "severe" impairment is one which significantly limits the physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c) and 416.920(c).

Craig and SSR 96-7p provide that although an ALJ may look for objective medical evidence of an underlying impairment capable of causing the type of pain alleged, the ALJ is not to reject a claimant's allegations solely because there is no objective medical evidence of the pain itself. Craig, 76 F.3d at 585, 594; SSR 96-7p ("the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record"). For example, the allegations of a person who has a condition capable of causing pain may not be rejected simply because there is no evidence of "reduced joint motion, muscle spasms, deteriorating tissues [or]

21

redness" to corroborate the extent of the pain. Id. at 595. Nevertheless, Craig does not prevent an ALJ from considering the lack of objective evidence of the pain or the lack of other corroborating evidence as factors in his decision. The only analysis which Craig prohibits is one in which the ALJ rejects allegations of pain solely because the pain itself is not supported by objective medical evidence.

The ALJ noted the requirements of the applicable law and Regulations with regard to assessing pain, symptoms, and credibility. (Tr. at 46-47.) The ALJ found at the first step of the analysis that Claimant's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (Tr. at 47.) Thus, the ALJ made an adequate threshold finding and proceeded to consider the intensity and persistence of Claimant's alleged symptoms and the extent to which they affected Claimant's ability to work. (Tr. at 47-49.) At the second step of the analysis, the ALJ concluded that Claimant's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible. The residual functional capacity assessment above contains all limitations reasonably supported by the [C]laimant's credible testimony concerning the intensity, persistence, and limiting effects of her symptoms and by the objective medical evidence in the record." (Tr. at 47.)

Claimant asserts that the ALJ erred in finding her incredible because she had received only routine and conservative treatment. (Document No. 11 at 9.) Claimant contends that she consistently complained of poor mental health symptoms and sought treatment, was referred to a mental health specialist, and treatment consisted of various psychotropic medications and counseling over several years. (Id.) She asserts that her treatment history is an indicator that her allegations are credible. (Id.)

In assessing Claimant's credibility, the ALJ properly considered the factors set forth in 20 C.F.R. § 404.1529(c)(3). He summarized Claimant's conditions and treatment, her exacerbating factors, medication side effects, her daily activities, and the opinion evidence. (Tr. at 47-49.) In addressing the treatment, the ALJ noted that Claimant had received "essentially routine and/or

conservative treatment." (Tr. at 49.) He previously summarized her treatment, which essentially consisted of medication therapy and counseling. Claimant did not require more invasive treatment or even surgical treatment. The ALJ noted that Claimant's treatment was successful in controlling her alleged symptoms when she was compliant. (Tr. at 49.) The mere label of her treatment as "routine" or "conservative" does not detract from the ALJ's otherwise proper credibility analysis. Accordingly, the undersigned finds that the ALJ's credibility assessment is supported by substantial evidence.

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Court confirm and accept the foregoing findings and **RECOMMENDED** that the District Court **DENY** the Plaintiff's Motion for Judgment on the Pleadings (Document No. 11.), **GRANT** the Defendant's Motion for Judgment on the Pleadings (Document No. 12.), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Thomas E. Johnston, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have three days (mailing/service) and then fourteen days (filing of objections) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155, 106

S.Ct. 466, 475, 88 L.Ed.2d 435 (1985), <u>reh'g denied</u>, 474 U.S. 1111, 106 S.Ct. 899, 88 L.Ed.2d 933 (1986); <u>Wright v. Collins</u>, 766 F.2d 841, 846 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91, 94 (4th Cir.), <u>cert. denied</u>, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Johnston, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to send a copy of the same to counsel of record.

Date: February 20, 2015.

R. Clarke VanDervort
United States Magistrate Judge